UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAVID BYERS, a Utah resident; DARRELL BYERS, a Utah resident; DALE BYERS, a Utah resident; DOYLE BYERS, a Utah resident,<br><br>Plaintiffs,<br><br>v.<br><br>LARRY BULL, individually and as Trustee of the Delbert Parker Revocable Trust, an Idaho resident; D.A. DAVIDSON & CO., a Montana corporation; THOMAS J. HOLMES, individually and as shareholder of Beard, St. Clair Gaffney, PA, and as shareholder and president of L. JONES, CHARTERED, PA, an Idaho professional services corporation; BEARD ST. CLAIR GAFFNEY PA, an Idaho professional services corporation,<br><br>Defendants. | Case No. 4:23-cv-00494-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Plaintiffs' Motion to Compel and Determine Privilege. Dkt. 48. Plaintiffs' request the production of information and documents that Defendants have withheld under the attorney-client privilege on the basis that the fiduciary or fraud exceptions apply, or alternatively, that Defendant Larry Bull has waived the privilege altogether. *Id.* Because oral argument would not significantly aid its decision-making process, the Court will decide the motion on the briefing. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). Upon consideration, and for the reasons below, the Motion is GRANTED in

part and DENIED in part.

## II. BACKGROUND

Plaintiffs are four brothers who are bringing various claims against Defendants related to the alleged mismanagement of their grandfather's trust. Their grandfather, Delbert Parker, worked with Defendant Thomas Holmes to prepare a will and revocable trust in 2004 and to later amend the trust in November 2006. Dkt. 44, at 3–4. As part of that trust, upon Parker's death, Plaintiffs' father ("Harvey") and Parker's stepdaughter were to receive yearly payments from the trust. Dkt. 40, at 5. The trust also dictated that, should a beneficiary die, the beneficiary's share would go to the beneficiary's issue by representation. *Id.*

Parker died on March 31, 2007. Dkt. 40, at 3. Before his death, he had a strained relationship with both beneficiaries of the trust. Dkt. 40, at 4. Parker allegedly believed Harvey maintained a relationship with him for his money, and he also did not trust that Harvey was responsible in financial matters. *Id.* Even still, Parker left Harvey 75% of the trust, and Harvey was to receive $15,000 a year from the trust. Dkt. 40, at 5.  Upon the death of Parker, Larry Bull became the trustee. Dkt. 40, at 6. At times, Bull would allegedly consult with Holmes as to the proper administration of the trust. Dkt. 40, at 16 (accusing Holmes of "advising the other Defendants in the conduct in which they engaged as alleged herein").

In 2009, Holmes assisted in the drafting and filing of a "TEDRA" [1] agreement (Dkt.

---

[1] TEDRA is an acronym for the Trust and Estate Dispute Resolution Act, found at Idaho Code §§ 15-8-101 et seq. The purpose of the TEDRA is to "set forth generally applicable statutory provisions for the resolution

44, at 7), which amended the trust and, in pertinent part, gave Harvey an up-front lump sum distribution from the trust of $100,000 and then 75% of the trust thereafter to be distributed annually in $50,000 increments. Dkt. 40, at 9. Additionally, in the event of Harvey's passing, his shares would pass to his spouse, then his issue, rather than directly to his issue. *Id.* Bull signed this agreement before it was filed, along with Harvey and Parker's stepdaughter. Dkt. 45, at 5.

Harvey started experiencing health issues as he got older, which included dementia. Dkt. 40, at 10. Plaintiffs became concerned about Harvey's ability to care for himself, especially as he spent significant amounts of money and acted in ways that put his safety at risk. Dkt. 40, at 11. Harvey's wife mentioned the trust to Plaintiffs, and Plaintiffs contacted Defendant Bull to discuss the trust. *Id.* Plaintiffs claim they asked about the assets in the trust to make sure they would be sufficient for Harvey's needs, and they also asked whether they were beneficiaries of the trust, to which Bull replied they were not. *Id.* Harvey later died on October 21, 2022. Dkt. 40, at 12. When he died, the assets in the trust allocated to Harvey were entirely depleted. *Id.*

Relevant to this Motion, Plaintiffs have accused Bull of fraudulently misrepresenting that they were not beneficiaries of the trust, and also that they were deprived of their pecuniary interests and rights to information due to this misrepresentation. Dkt. 40, at 18–20. Additionally, Plaintiffs allege that Bull and Holmes conspired together to change the terms of the trust against the intent of Parker and to the detriment of Plaintiffs

---

of disputes and other matters involving trusts and estates." IDAHO CODE § 15-8-101(2). Additionally, the TEDRA is "intended to provide nonjudicial methods for the resolution of matters by agreement." *Id.*

as beneficiaries. Dkt. 40, at 20–22.

Plaintiffs have already deposed Bull. During that deposition, Bull indicated that he knew Holmes, and that Holmes was "the guy that's causing me all this problem." Dkt. 48-7, at 4. Additionally, in response to interrogatories, Bull invoked the attorney-client privilege and indicated that he acted "in a manner consistent with legal counsel provided by attorney Thomas J. Holmes" when asked whether there was any person whose acts or omissions may bar or reduce Plaintiffs recovery against him or whether there were any superseding or intervening causes for Plaintiffs' damages. Dkt. 48-6, at 3.

Plaintiffs now wish to obtain access to communications which Defendants[2] have claimed are protected by the attorney-client privilege. Dkt. 48, at 1–2. Additionally, Plaintiffs would like to determine whether such privilege exists before deposing Holmes so their questions may reflect such a limitation. *Id.*

### III. LEGAL STANDARD

"The attorney-client privilege is the oldest of the privileges for confidential communications" and is meant "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "A party asserting the attorney-client privilege has the burden of establishing the relationship and the privileged nature of the communication." *United States v. Bauer*, 132

---

[2] Defendant D.A. Davidson & Co. did not file a response in the instant Motion. Plaintiffs filed a Motion to Compel against D.A. Davidson & Co (Dkt. 53) on separate grounds. This Motion exclusively relates to communications and documents between Defendants Bull and Holmes.

F.3d 504, 507 (9th Cir. 1997) (citing *Ralls v. United States*, 52 F.3d 223, 225 (9th Cir. 1995)). In a diversity case, the attorney-client privilege is governed by state law. *See* Fed. R. Evid. 501.

"Under Idaho law, '[f]or the attorney-client privilege to apply, the communication must be (1) confidential within the meaning of the rule, (2) made between persons described in the rule, and (3) for the purpose of facilitating the rendition of professional legal services to the client.'" *Pollock v. Nationwide Mut. Ins. Co.*, 549 F. Supp. 3d 1202, 1208 (D. Idaho 2021) (citing *Truckstop.Net, L.L.C. v. Sprint Commc'ns Co., L.P.*, 2007 WL 2480001, at *3 (D. Idaho Aug. 29, 2007); Idaho R. Evid. 502(b)).

The Court here, sitting in diversity jurisdiction, must apply state substantive law in the way it believes the Idaho Supreme Court would apply it, and that includes in finding whether there is an exception to, or waiver of, the attorney-client privilege. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78–79 (1938); *see also Arriwite v. SME Steel Contractors, Inc.*, 2021 WL 1218451, at *6 (D. Idaho Mar. 31, 2021) (citing *Gravquick A/S v. Trimble Navigation Intern. Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003)).

### A. Fiduciary Exception

Under the federal common law, when a trustee obtains legal advice related to the exercise of fiduciary duties—including in the administration of a trust—the trustee cannot withhold attorney-client communications from the beneficiaries of the trust. *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 165 (2011). Some states have chosen to adopt this "fiduciary exception" to the attorney-client privilege. *See Riggs Nat. Bank of Washington, D.C. v. Zimmer*, 355 A.2d 709 (Del. Ch. 1976); *In re Kipnis Section 3.4 Trust*,

329 P.3d 1055, 1061 (Ariz. Ct. App. 2014). On the other hand, several states have chosen to reject the fiduciary exception. *See Canarelli v. Eighth Jud. Dist. Ct. in and for Cnty. of Clark*, 464 P.3d 114, 122 (Nev. 2020); *Crimson Trace Corp. v. Davis Wright Tremaine LLP*, 326 P.3d 1181, 1193 (Ore. 2014), *Huie v. DeShazo*, 922 S.W.2d 920, 925 (Tex. 1996).

A key difference between the states who have chosen to adopt the fiduciary exception and those who have not is the authority the states' highest courts felt they possessed (or did not possess) to create new exceptions to the attorney-client privilege. *Compare Kipnis*, 329 P.3d at 1061 *with Crimson Trace*, 326 P.3d at 1192–93. To date, the Idaho Supreme Court has not addressed whether the fiduciary exception applies to trustees who invoke the attorney-client privilege for communications with their attorneys regarding the administration of a private trust.

### B. Waiver

In Idaho, "a privilege is waived when the holder of the privilege 'voluntarily discloses or consents to disclosure of any significant part of the matter or communication.'" *United Heritage Property and Cas. Co. v. Farmers Alliance Mut. Ins. Co.*, 2011 WL 3204765, at *3 (D. Idaho 2011) (quoting Idaho R. Evid. 510). Waiver of the attorney-client privilege can be either express or implied. *Skelton v. Spencer*, 565 P.2d 1374, 1376–77 (Idaho 1977). Idaho courts have not specifically addressed whether putting an attorney's legal advice "at issue" constitutes waiver, but in *Skelton*, the Idaho Supreme Court did hold that the plaintiff had waived the attorney-client privilege by giving testimony about privileged communications and using those communications as a defense. *United Heritage*, 2011 WL 3204765, at *3 (citing *Skelton*, 565 P.2d at 1378).

As Plaintiffs have noted repeatedly, "the attorney-client privilege is a defensive shield and not an offensive sword." *Skelton*, 565 P.2d at 1377. "Parties in litigation may not abuse the [attorney-client] privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials." *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003).[3]

### C. Crime-Fraud Exception

Under the Idaho Rules of Evidence, the attorney-client privilege does not apply where "the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a . . . fraud." Idaho R. Evid. 503(d)(1).  This includes communications "which solicit or offer advice for the commission of a . . . fraud." *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992). Fraud is "a knowing misrepresentation or knowing concealment of a material fact made to induce another to act to his or her detriment." *Fraud, Black's Law Dictionary* (12th ed. 2024).

### IV. DISCUSSION

At the outset, the Court agrees with Defendants Holmes, L. Jones Chartered PA, and Beard St. Claire Gaffney PA's ("Holmes, L. Jones, and Beard") assertion that the existence of an attorney-client relationship between Defendant Bull and Defendant Holmes is undisputed. Dkt. 50, at 4. The very nature of Plaintiffs' arguments—that an exception to

---

[3] It remains true as it did in *United Heritage* that, because the Idaho Supreme Court has "not squarely addressed whether putting information at issue in a case amounts to waiver," *Bittaker* is informative as to whether Defendant Bull has waived the attorney-client privilege, even though it is a case out of the Ninth Circuit, rather than Idaho courts. 2011 WL 3204765, at *3.

the attorney-client privilege exists or the privilege has otherwise been waived—indicates that both parties consider the communications in dispute here to be privileged. Additionally, Defendant Bull retained Defendant Holmes for legal counsel related to the administration of the Parker Trust, and there is every indication that the communications between the two parties were confidential. Therefore, the Court will presume for the purposes of this Motion that Defendants have met their burden of establishing the privileged nature of the communications between Defendant Bull and Defendant Holmes.

### A. Fiduciary Exception

First and foremost, the Court would like to clarify exactly what it is deciding here and what it is not. Holmes, L. Jones, and Beard's Response brief was extensively dedicated to the argument that Plaintiffs were not the "real clients" of Holmes; therefore, the fiduciary exception cannot apply. Dkt. 50, at 4–9. While nuanced, the Court is not analyzing the relationship between Holmes and Plaintiffs in deciding whether the fiduciary exception applies. In these circumstances, the Court finds that Plaintiffs are correct in their assertion that the fiduciary exception is more concerned with the relationship between the trustee and beneficiaries (Bull and Plaintiffs) rather than the beneficiaries and the trustee's attorney (Plaintiffs and Holmes). In other words, if the fiduciary exception were to apply in this case, it would be because Bull was only seeking legal advice in his capacity as trustee, and in doing so, he could not later assert the attorney-client privilege to the detriment of those to whom he held a fiduciary obligation; it would not be because there is

an attorney-client relationship between Holmes and Plaintiffs.[4]

### 1. Balancing Fiduciary Duties and the Attorney-Client Privilege

As mentioned above, the Idaho Supreme Court has not directly addressed whether the fiduciary exception applies in the context of private trust administration. As such, the Court must decide whether the Idaho Supreme Court, if given the opportunity, would recognize such an exception. *See Gravquick*, 323 F.3d at 1222.

Plaintiffs argue that the Idaho Supreme Court would adopt such an exception. To support that assertion, they note that the Idaho Supreme Court has held trustees cannot represent themselves *pro se* because they act for the benefit of the beneficiaries, not themselves. Dkt. 48-1, at 8; *Indian Springs LLC v. Indian Springs Land Inv., LLC*, 215 P.3d 457, 461 (Idaho 2009). They also compare the circumstances here with *Harrigfeld* and *Kalb* where the Idaho Supreme Court held attorneys who prepare testamentary instruments owe fiduciary duties to beneficiaries. Dkt. 48-1, at 8; *Harrigfeld v. Hancock*, 90 P.3d 884, 888 (Idaho 2004); *Kalb v. Wise*, 475 P.3d 316 (Idaho 2020). In opposition, Holmes, L. Jones, and Beard argue the Court of Appeals of Idaho has stated that attorneys of fiduciaries are not hired to benefit a particular beneficiary, but to assist the fiduciary in the performance of his or her duties. Dkt. 50, at 4; *Allen v. Stoker*, 61 P.3d 622, 624 (Idaho Ct. App. 2002). Defendant Bull also uses *Allen* to argue a third-party beneficiary analysis—

---

[4] The Court recognizes that the fiduciary exception has been framed in this way. *See United States v. Evans*, 796 F.2d 262, 266 (9th Cir. 1986) (quoting *Washington-Baltimore Newspaper Guild, Local 35 v. Washington Star Co.*, 543 F.Supp. 906, 909 (D.D.C. 1982)) ("[A]s a representative for the beneficiaries of the trust which he is administering, the trustee is not the real client in the sense that he is personally being served.") However, the crux of the issue here is not who the true client is, as Plaintiffs are making no claim that they are the true client of Holmes. Rather, the Plaintiffs' arguments focus on Bull's role as fiduciary and his ability to invoke the attorney-client privilege. Dkt. 52, at 3.

where attorneys themselves would owe a fiduciary duty to a beneficiary—is inappropriate in a relationship between counsel for the personal representative of an estate and a decedent's heirs. Dkt. 51, at 3.

The Plaintiffs' arguments fall short. None of the cases provided are overly persuasive in deciding whether the Idaho Supreme Court would recognize a wholly new exception to the attorney-client privilege. The question as to whether a trustee can represent a trust *pro se* in a lawsuit is not comparable to whether a trustee can assert the attorney-client privilege against beneficiaries for legal advice obtained strictly regarding the trust.[5] This ignores the fact that, even if a trustee is seeking legal advice solely as to the proper administration of a trust, it is often to protect the trustee from personal liability should they improperly administer the trust.

A trustee acting in this official capacity is still the client of an attorney, which means that the incredibly important reasons for why the attorney-client privilege exists are implicated. "This is so because heirs are *not* necessarily intended beneficiaries of the attorney's services and, in fact, are frequently in a position of conflict with the attorney's client, the personal representative." *Allen*, 61 P.3d at 624. The complexity in balancing the competing interests between trustees and beneficiaries in recognizing the fiduciary exception is evidenced by the plethora of courts who have chosen *not* to adopt the exception

---

[5] The Plaintiffs used *Indian Springs*, 215 P.3d 457 to make this comparison. However, the defendants in that case were attempting, as trustees, to represent a trust *pro se* in the lawsuit. The court was more concerned that the trustee would "be engaged in the unauthorized practice of law;" because proceeding *pro se* involves representing one's own self, the defendants could not attempt to represent the interests of the beneficiaries essentially as their attorneys *Id.* at 465. The court's holding did not involve the trustee's administration of the trust, and to compare the two situations is a stretch.

for a variety of reasons.

Similarly, the utility of *Harrigfeld* and *Kalb* to the Court's analysis is limited. The fiduciary exception, as Plaintiffs concede, concerns the relationship between trustee and beneficiary, not beneficiary and trustee's attorney. Additionally, *Harrigfeld* and *Kalb* both involves the construction of a trust instrument, not its administration. The Court does not agree with Plaintiffs' assertion that "if an attorney's duties extend to the beneficiaries of instruments the attorney drafts . . . the advice the attorney renders" as to the administration of those instruments "is likewise for the benefit of those beneficiaries, and there should be no privilege that can block disclosure of the related communications." Dkt. 48-1, at 8. Such a claim does not account for the importance of the attorney-client privilege and the potentially competing interests of a trustee and a beneficiary.[6]

Turning to Defendants' arguments, *Allen* is not directly on point here, as the case was more focused on whether a personal representative's attorney owed a duty of care to the heirs of an estate under a third-party beneficiary theory. 61 P.3d at 624. As the Court previously noted, the question here is not whether Holmes owed a duty to Plaintiffs, but rather if the attorney-client privilege can be asserted against them by Bull. However, *Allen* is helpful in that an Idaho appellate court has recognized that an attorney-client relationship, even if formed solely to ensure proper administration of an estate, is not one between the attorney and the beneficiaries but between the trustee and the attorney. *See id.* Such a recognition bolsters the reasoning provided by multiple state courts when choosing

---

[6] By extension, this also fails to recognize the professional responsibility that attorneys have to their clients to maintain confidences.

not to adopt the fiduciary exception because doing so could risk the very real protections the attorney-client privilege provides in the pursuit of justice.[7]

Ultimately, while Defendants' use of *Allen* is persuasive when taken in tandem with other state court decisions, the Court must return to the overarching question: would the Idaho Supreme Court recognize the fiduciary exception to the attorney-client privilege? In reality, if the Idaho Supreme Court were to hear a case in which it had the opportunity to adopt the fiduciary exception, it could very well follow the theme set out in *Allen* (and the example of various state courts around the nation) and decline to adopt the exception. Additionally, it could decide, as the federal courts and a few states have, that fiduciary duties conquer in "an instance of the attorney-client privilege giving way in the face of a competing legal principle." *United States v. Mett*, 178 F.3d 1058, 1063 (9th Cir. 1999). Recognizing the merit behind both positions, the Court now turns to the existing exceptions to the attorney-client privilege in Idaho and the procedures the Idaho Supreme Court already has in place for amending the Idaho Rules of Evidence for further guidance.

*2. Recognized Exceptions to the Attorney-Client Privilege*

Plaintiffs argue that the Idaho Supreme Court's statement, " . . . this Court construes [the Idaho Rules of Evidence] to…promote the development of evidence law . . .," somehow indicates that it would adopt the fiduciary exception. Dkt. 52, at 4–5; *State v. Chambers*, 465 P.3d 1076, 1081 (Idaho 2020). The Court disagrees.

---

[7] For example, in *Canarelli*, the Supreme Court of Nevada stated, "allowing a beneficiary to view communications between a trustee and his or her attorney when the trustee is adverse to the beneficiary would discourage trustees from seeking legal advice." 464 P.3d at 122. In *Huie*, the Supreme Court of Texas reasoned that a trustee "must be able to consult freely with his or her attorney to obtain the best possible legal guidance." 922 S.W.2d at 924.

In *Crimson Trace*, the Oregon Supreme Court was deciding whether to recognize the fiduciary exception to the attorney-client privilege. *Crimson Trace Corp. v. Davis Wright Tremaine LLP*, 326 P.3d 1181, 1192 (Or. 2014). The court ultimately decided not to adopt the fiduciary exception, and it was strongly persuaded by the fact there was an existing list of exceptions to the attorney-client privilege in the Oregon Evidence Code that was not short or general, and the specificity in the list implied a preclusion of common law exceptions. *See id.* at 1193–95.

The Court is similarly persuaded. The Idaho Rules of Evidence recognize six enumerated exceptions to the attorney-client privilege. Idaho Rules of Evidence 502(d)(1–6).. The exceptions are specific, particularized, and enacted by the Idaho Supreme Court itself. While the Idaho Supreme Court has stated it construes the Idaho Rules of Evidence to promote the development of evidence law, there really is no way to construe any of the existing exceptions to include the fiduciary exception.

As both parties have acknowledged, there is a fiduciary exception in the Idaho Rules of Evidence in a corporation context, which is the exception most comparable to the fiduciary exception in a trust administration context. Idaho Rules of Evidence 502(d)(6)(A). Plaintiffs repeatedly argue that the fiduciary exception really functions the same in a private trust context as it does within a corporation.[8] Unfortunately, such a simple assertion downplays the vast differences between small, private estate administration and

---

[8] Plaintiffs also use the fiduciary exception as it has been applied by the Court and Ninth Circuit in the ERISA context to argue its applicability here. Dkt. 48-1, at 7–8. The ERISA argument is unpersuasive for the same reasons the corporate fiduciary exception is. Additionally, state law governs the application of this exception, making decisions by the Court and Ninth Circuit less applicable to this question.

large, public fiduciary roles that can present very different challenges and circumstances for trustees and the attorney's that advise them. One of the most obvious differences between the two is the potential lack of expertise in the trustee of a private trust relative to a corporate fiduciary. The value in legal guidance to a private trustee, who potentially has much less ability to protect themselves in the event of a lawsuit over mismanagement allegations, is high; such a trustee is protected by the attorney-client privilege.

It is obvious from the discussion above that, were the Idaho Supreme Court to adopt the fiduciary exception, it would only do so by very deliberately balancing the interests of beneficiaries and trustees while preserving the importance of the attorney-client privilege. With such important issues at stake, the Court assumes the Idaho Supreme Court would utilize its established procedures for adopting amendments to the Idaho Rules of Evidence. This includes receiving a recommendation to amend, providing notice and accepting comments, and adopting the rule only after consideration and recommendation by the Administrative Conference. *See Protocol for Communicating Proposed Rules and Amendments*, State of Idaho Judicial Branch (Jan. 17, 2017), https://isc.idaho.gov/main/rules-for-public-comment#:~:text=Rules%20and%20Amendments%20are%20available,the%20rule%20a mendment%20becomes%20effective.[9]

---

[9] The Idaho Supreme Court has most recently amended the Idaho Rules of Evidence in 2019 and 2021. *See In re: Amendments to Idaho Rules of Evidence 101 and 805*, State of Idaho Judicial Branch (May 19, 2019), https://isc.idaho.gov/recent-amendments; *In re: Amendment to Idaho Rules of Evidence 201 and 410*, State of Idaho Judicial Branch (Jan. 13, 2021), https://isc.idaho.gov/recent-amendments. Both Orders are evidence the Idaho Supreme Court utilizes its established procedures when amending the Idaho Rules of Evidence, and even if the Idaho Supreme Court would "construe the Rules to promote the development of

It is next to impossible for the Court to predict what the Idaho Supreme Court would do in such a situation. Upon consideration of the issue, however, the Court finds it is wholly possible the Idaho Supreme Court would not recognize the exception, particularly because such important interests are at stake. Even if the Court felt the Idaho Supreme Court would recognize the exception, there is simply too little direction from the Idaho Supreme Court based on their existing decisions for the Court to recognize the fiduciary exception in this case. Additionally, the Court will not bypass the existing procedures utilized by the Idaho Supreme Court to amend the Idaho Rules of Evidence. As such, the Court denies Plaintiffs' request to recognize the fiduciary exception to compel production here.

## B. Waiver

As discussed, the attorney-client privilege is one which serves an important purpose, namely "recogniz[ing] that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The client, as the holder of the privilege, is the only one who can waive it. *State v. Iwakiri*, 682 P.2d 571, 574 (Idaho 1984). In analyzing whether Bull has waived the attorney-client privilege here, the Court is mindful of the valuable purposes for which the privilege exists in the first place.

There are two main instances in which Bull has potentially waived the attorney-client privilege he shares with Holmes. First, Plaintiffs asked Bull to respond to two interrogatories: one which asked Bull whether there were any superseding or intervening

---

evidence law," it would be unlikely to adopt a wholly new common-law exception to the attorney-client privilege that did not pass the gauntlet of the standard amendment process.

causes for Plaintiffs' damages; and the second which asked whether any person or entities' acts or omissions may bar or reduce Plaintiffs' recovery against Bull. Dkt. 48-1, at 5. Bull responded almost identically to both, stating first that he objected "to the extent it requests disclosure of communications protected by the attorney-client privilege" and that he "administered the Parker Trust in a manner consistent with legal counsel provided by attorney Thomas J. Holmes." Dkt. 48-6, at 3. Second, during Bull's deposition, he vaguely blamed Thomas Holmes for his very involvement in the lawsuit.[10] Dkt. 48-7, at 4.

Defendants Holmes, L. Jones, and Beard contend that, during these instances, Bull was simply raising general defenses unrelated to specific legal advice, and that such references do not necessitate the disclosure of privileged communications. Dkt. 50, at 14–15. The Court does not agree with such an assertion. It is true that Bull has been extremely vague in shifting the blame to Holmes. However, even in that vagueness, he is directly using Holmes' counsel as a defense. In responding to the interrogatories, Bull implies that he, at the very least, cannot be fully liable for the alleged harms Plaintiffs have suffered because he was acting in line with the "legal counsel" provided by Holmes, and in the same written breath, invokes the attorney-client privilege. This is the epitome of using the attorney-client privilege as "sword and shield."

Unfortunately, because Bull has not been very forthcoming with additional information as to how Holmes is responsible for Bull's involvement in this case, the Court

---

[10] When asked, "Who is Thomas Holmes," Bull responded by saying, "He's the guy causing me all this problem." After Bull said Holmes was the reason he "had to come in here with these guys" – i.e. to the deposition – and Plaintiffs asked him why he thought Holmes was the reason for that, Bull cryptically replied with, "I don't know." Dkt. 48-7, at 4.

can only assume that Bull is alleging Holmes gave him wayward legal advice in confidential communications. Effectively, Bull is putting Holmes' advice "at issue."

In most cases finding an implied waiver of the attorney-client privilege by putting legal advice "at issue," the client is extensively testifying to their attorney's bad advice or behavior. For example, in *Skelton*, the Plaintiff testified to communications between her and her attorneys during a settlement, claiming they had misled her to accept the terms of the settlement. 565 P.2d at 1376. The court in that case held the Plaintiff could not then prevent the other side from asking questions to those same attorneys about what was said during the settlement proceedings. *Id.* Similarly, in *United States v. Bilzerian*, the defendant contended he thought his allegedly fraudulent transactions were legal, in accordance with advice given from his counsel. 926 F.2d 1285, 1292 (2d Cir. 1991). That court held the defendant had waived the attorney-client privilege because the content of those communications would be "directly relevant in determining the extent of his knowledge and, as result, his intent." *Id.*

Here, Bull did not offer the same level of detailed testimony as the parties in *Skelton* or *Bilzerian*. The Court recognizes as much and is not willing to completely forego the protections the attorney-client privilege provides. But Plaintiffs must be given some latitude to ask probing questions to prevent Bull from "asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials." *Bittaker*, 331 F.3d at 719. To balance the important protection of the attorney-client privilege while simultaneously fleshing out Bull's defense, the Court will allow Plaintiffs to ask a limited set of questions to Holmes during his deposition.

MEMORANDUM DECISION AND ORDER - 17

There is some contention from Defendants Holmes, L. Jones, and Beard that Plaintiffs are not accurately representing all the relevant provisions of the trust. *See* Dkt. 44, at 4 ("The Holmes Defendants specifically deny that Plaintiffs have cited all provisions of that Trust agreement which may be relevant to the subject matter of this action . . ."). This will help define the scope of the questions that will be appropriate at Holmes' deposition. In particular, Plaintiffs may ask whether Holmes ever counseled Bull to deviate from the express terms of the trust. If he answers in the affirmative, counsel may follow up by inquiring in what way he counseled Bull to deviate. And if Holmes counseled such a deviation, what was his basis for doing so? Plaintiffs may also ask whether Bull and Holmes ever communicated about administering or amending the trust in a way that was contrary to the terms of the trust, and if they did, what the reasons were for doing so. While limited in scope, this will allow Plaintiffs to ascertain whether any alleged mismanagement of the trust by Bull was at the behest of Holmes.

The Court is unsure, due to the sparse nature of Bull's previous answers to interrogatories and deposition questions, what answers these questions will yield. If such a question is asked, and Holmes' responses impermissibly implicate the attorney-client privilege, the Court will not consider such answers admissible in the future. However, these few specific questions are necessary to understand the scope of advice given and whether there is any foundation to Bull's blanket statements that he might be less culpable because he was acting at the direction of Holmes.[11] Only by asking such questions will Plaintiffs

---

[11] Holmes, L. Jones, and Beard maintain that Bull is only asserting his actions were reasonable because he consulted with Holmes. Dkt. 50, at 14. However, in response to interrogatories, Bull is explicitly claiming

be able to adequately dispute Bull's contention that he cannot be liable for their alleged harms due to Holmes' counsel.

### C. Crime-Fraud Exception

As addressed above, the crime-fraud exception prevents the use of the attorney-client privilege where a client retains counsel for assistance in committing a fraud. There is no blanket rule that allows *in camera* review to determine the applicability of the crime-fraud exception. *United States v. Zolin*, 491 U.S. 554, 571 (1989). However, a judge may engage in an *in camera* review of any evidence or documents where there is a "'showing of a factual basis adequate to support a good faith belief by a reasonable person' that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *Id.* at 572 (quoting *Caldwell v. District Court*, 644 P.2d 26, 33 (Colo. 1982).

Plaintiffs allege Bull told them they were not beneficiaries of their grandfather's trust, preventing them from accessing information about the trust prior to all its assets being distributed. Dkt. 40, at 11. If such were true, Bull would have committed fraud if he knowingly misrepresented the material fact of Plaintiffs' beneficiary status, preventing them from stopping mismanagement of the trust against their interest. What's more, if Bull received counsel from Holmes to carry out such an act, the crime-fraud exception would apply to that communication between the two of them.

---

that he acted according to Holmes' legal counsel and doing so could be a superseding or intervening cause for his liability. Bull is placing a level of culpability directly on Holmes, not just claiming his actions are reasonable because he consulted with counsel.

While Bull argues that there is no evidence to support a reasonable belief that an *in camera* review will yield evidence of fraud, the Court finds the opposite is true. When there is only one communication between Holmes and Bull in 2018, and it coordinates with the date that Bull told the Plaintiffs that they were not beneficiaries of the trust (Dkt. 48-1, at 4), the Court has a reasonable belief that evidence of fraud, if any, will likely be contained in that communication. *See In re Grand Jury Subpoena*, 745 F.3d 681, 689–90 (3rd Cir. 2014) (finding the court had a reasonable belief that evidence of fraud would be contained in a communication where there was an affidavit from the attorney that they were consulted on a fraudulent project, even where the attorney did not reveal details about the communication). Plaintiffs are correct that they can provide little additional evidence of fraud without access to the document itself.

Because the Court has a reasonable belief that evidence, if any, as to whether Bull consulted with his attorney to fraudulently tell Plaintiffs they were not beneficiaries of their grandfather's trust will be found in the 2018 document being withheld under the attorney-client privilege, it will conduct an *in camera* review of the document.

## V. CONCLUSION

The Court will not compel production of privileged information using the fiduciary exception, as it is unlikely the Idaho Supreme Court would find such an exception exists in this circumstance. The Court will allow for limited questions during Holmes' deposition, as Bull has waived the attorney-client privilege through his vague accusations. Finally, the court will conduct an *in camera* review of the 2018 document to determine whether the crime-fraud exception applies, as it corresponds to the date in which Bull allegedly

MEMORANDUM DECISION AND ORDER - 20

misrepresented Plaintiffs' beneficiary status.

## VI. ORDER

The Court HEREBY ORDERS:

1.  Plaintiffs' Motion to Compel Production and Determine Privilege is GRANTED in PART and DENIED in PART as outlined above.

2.  Plaintiffs may ask limited questions to Thomas J. Holmes at his deposition in line with the guidance above.

3.  The Court will conduct an *in camera* review of the 2018 document to determine whether the crime-fraud exception applies. Defendants will have three (3) days from the entry of this Order to file the document under seal for the Court to review.

DATED: November 8, 2024

David C. Nye
Chief U.S. District Court Judge